Good morning. May it please the court. Opposing counsel, Ms. Golden. My name is Matt Catlett. I represent the appellant in this matter. His name is Thompson Awnings. Mr. Awnings changed his name legally between the incident giving rise to the claims in this case from Tristan Simon to Thompson Awnings, but his name is Awnings. I'll refer to him as Awnings. This is on appeal from a grant of motion for summary judgment by Appellees Duncan and Fullerton. These are City of Lincoln, Nebraska police officers sued by Awnings in their individual capacities, not in their official capacities, as well as the denial earlier in the litigation of a motion by Awnings to disqualify the City of Lincoln, Nebraska Attorney's Office. Counsel, is there any authority for the entire office being disqualified? Facts like what is present here? Well, I understand that the appellees have argued that, well, the word in Dean Foods Products, the court held that the liability extended to the lawyers, the now Assistant Attorney General for the State of Arkansas, I can't remember his name right now, but Griffin, and it said, well, it extends to his staff, and I understand that the appellees' position is, well, that doesn't necessarily mean all of the lawyers. I do submit that I believe that is what the court meant by the word staff, just all staff, all other lawyers. It wouldn't even, to me, make sense to say that it applies to a paralegal because a paralegal doesn't practice law. So I submit that when this court decided Dean Foods Products in 1979 and said that the liability, that not only can Griffin not be adverse to Dean in that particular case, nobody else, essentially, in the Attorney General of the state, and I understand that's what the appellee's position here is, but I believe that that's what this court held, is that it applies to all other partners, again, with the assistant . . . Did the attorney here, I guess her name was Elliott, did she actually work on his case? Well, when she was with the Public Defender's Office, yeah. I mean, as far as we know . . . I don't mean generally with the Public Defender's Office. I mean, did she work on his case, defending him? I don't think so. I mean, I guess we're willing to stipulate that she didn't work on his case. I'm not entirely sure what it means. Is there anything in the record about her knowledge or familiarity with his case? Did she have any knowledge of the case? We don't know. I mean, and that's the whole issue here, is that we don't call her as a witness to determine whether she learned anything or not. It's just a per se rule, right? The attorney-client relationship creates an irrefutable presumption that confidences were disclosed, and this court has held that that rule applies to all other then-partners and associates in that firm. The Public Defender's Office is essentially a firm. There are other lawyers in the office, deputy public defenders, chief deputies, that are working there. At the time, there isn't any question that she was there at the time that a lawyer in that office was defending awnings in the related criminal case. No question at all. But your motion takes the whole office out, not people who may have come after awning had anything to do or any case that awning had anything to do, as I understand it. Is that right? They just have to go out and hire a law firm outside of the Public Defender's Office to represent them in this case. Is that your argument? The city attorney's office, you mean? Whoever you're trying to disqualify here. Right, yeah, the city of Lincoln attorney's office. So, I mean, I hope there's no question that Elliot herself could not represent an interest adverse to awnings in this case because I think that's beyond debate. She moved to withdraw right away. Well, that's not what you're asking us to rule, though. Right, I'm saying that the court below erred in denying the motion to disqualify the entire city of Lincoln attorney's office. Right, that's what we understand you to be saying. We're not getting from you authority to that effect. Well, I believe that this court has, that is the authority of this court, is that the conflict is imputed to all other attorneys. So when Elliot, she leaves the Public Defender's Office, when she worked there at a time when that office or another attorney in that office was representing awnings in a related criminal matter, she goes to the city attorney's office. Not only can she not be adverse to awnings in a related matter, but none of the other attorneys in the office. It's the taint. It's immediately tainted. Moreover, in this case, we cannot forget this. Let me give you a hypothetical. Let's assume that the public defender who was there at the time is out of office and a new public defender has been elected and hired all new lawyers. And you're saying the office still, your request is broad enough that the office would be out of business on your client's case. Is that right? Yeah, still. Because, I mean, what matters is that she was there at the time. At the time that he was being represented by that office, she was there. And this court says... It was the office, but it wasn't any of the personnel. I'm sorry? It was the office, but it wasn't, at this time, any of the personnel that were there at the time. It's still just the public defender's office is out of business without regard to facts of who was there and who did what or anything like that. The city attorney's office, not the public defender's office. Whoever you're trying to describe. The city attorney's office, yes. We believe that this court's precedent is that, first of all... Well, wait a minute. You're not saying that if the city attorney were replaced and hired all new staff that that office would be disqualified. Your argument hinges on Elliot working there. Yes. I'm sorry if that was not clear. You're saying if Elliot is working in the city attorney's office, your theory is her conflict is imputed to everybody else in the office, whether they are new or veteran or whatnot. That's right. But if she can be screened and the other people are still eligible to work, then you lose. That's what the case comes down to. Yeah, if she can be screened. I believe that it's a per se rule. I believe that once she joins, then it's just as presumed that everybody else in the office... You're basing that on Dean.  That's your interpretation. Yes, that's my interpretation of Dean. Moreover, what about this claim against Officer Banks? Would you mind talking about that briefly? Okay. Is your theory a Fourth Amendment claim or a due process claim or both? The rule is that we evaluate Fourth Amendment reasonableness standard applies not merely to arrests and seizures but searches but also the transportation and booking of suspects. So I understand that the trial court said, well, it wasn't a seizure. Banks wasn't seizing him. Well, okay, fine. I mean we asserted alternative theories, one, either the Fourth Amendment or the Fourteenth Amendment. I guess we asserted both of them. But I believe that the court could use the objective, the reasonableness standard of the Fourth Amendment since he was seized. I mean he was being transported from the hospital to the jail. I mean he was clearly seized at that time. I guess at the end of the day, it doesn't particularly matter to me whether you call it a Fourth Amendment claim or a Fourteenth Amendment claim. Well, I don't care whether it matters to you, but I'm curious whether the standard is different. And if so, which standard should we use? Well, I would hope that the court uses a reasonableness standard as opposed to the Eighth Amendment deliberate indifference to a series. Why is that the correct standard? I mean I understand that it's not a situation where, I mean, if on the drive from the hospital to the jail, Awning starts vomiting blood or something like that or starts seizing or something like that, and then he just keeps going to the jail and doesn't turn around and go back to the hospital, I don't think there's any question that that would have to be evaluated under a Fourth Amendment reasonableness sort of a standard. All right, so you think it's a reasonableness standard. And your theory is Banks was unreasonable here because he didn't relay to the jailers the statement that the physician said he should be seen in a day or two? The ER physician's discharge paper that says needs to be seen by a physician within one to two days. And so that was a 12B6. That wasn't summary judgment. He was dismissed out early on. So what is that, negligence by him? It's not deliberate indifference, right? Well, I would submit that it was also deliberately indifferent to a serious medical need. If he knows, if he's got a piece of paper from, and that's what we alleged. Judge Kupf aired, he said, well, there's no way Banks could have known about the subsequently diagnosed fractured ribs and the collapsed lung and all that stuff because that happened 15 days after Awning got out of jail. We're not saying that Banks knew that stuff. We're saying that Banks had a piece of paper that says, from a doctor, that says needs to be seen by a physician. If what we allege is true, that he did not relay that to the jail staff, that they took an arrestee to the hospital to determine fitness for confinement and specifically doesn't tell the jail that, having that piece of paper in his hand, then not only is it unreasonable under a Fourth Amendment standard, we believe that that would apply, but also would be deliberately indifferent to a serious medical need because he's got a piece of paper signed or written by a doctor that says needs to see a doctor. Did the paper also say that he's fit for confinement? It did. It didn't say that he wasn't, yeah, we're not saying, but. What's the serious medical need then? Well, I have had this discussion. Sometimes when you bang your head, you go to the emergency room, they say, well, we're not seeing anything right now. No subdural hematoma, no brain bleeding, nothing like that. But, hey, these things sometimes take a little time to find out, so watch him. Make sure that he doesn't fall asleep. Make sure to go check on him every 30 minutes or every hour. He's okay to go home from the emergency room right now, but make sure to watch him. Well, I've taken enough of your time on banks if you wanted to address the other defendants. So you're in your rebuttal time. Yeah, I am in my rebuttal time. I just want to address very quickly, and then I'll sit down and come back for rebuttal. But Elliot did do some work on this case. She served, again, she filed notice of her intent to issue and serve these subpoenas deus ex tecum on these non-parties. Well, there wasn't anything in the face of the complaint, the face of Onning's complaint, that suggested, stated, suggested, hinted, implied, that any of these entities except for one, Brian, Brian Hospital, had any records in their possession or control responsive to the subpoenas. So one possibility is that she was guessing. Guessing? Another possibility is that she had acquired information, yet as the result of her former employment at the public defender's office. But I believe that this holding from Dean Foods Products says it's per se, it's automatic. It's a structural issue. It's not, we don't want to call. Relief to you on that. You want to go back and start the case over with new counsel? Yeah, I think it is a structural error. I don't think it's a matter of prejudice that court in Dean Foods Products keeps talking about promoting confidence in the public, by the public and the judiciary. All right, but that's what you want, is to litigate the same case over again just with different lawyers with the same record? Well, I would like to have appealed early on, but the United States Supreme Court decided many years ago that you cannot, that an order granting or denying a motion to disqualify counsel is vital for purposes of appeal. So you just have to litigate the case. So my position is that the appellees litigate the case at their risk at that point. And you've got to really pay attention to the precedent. I've got 43 seconds left. I'm going to sit down for now. Thank you. Thank you, Mr. Catlin. Ms. Golden? Good morning, judges. I'm Jocelyn Golden. I'm an assistant city attorney with the city of Lincoln, and I represent the appellees who are Lincoln Police Department officers, Joshua Fullerton, Ryan Duncan, and Tarvis Banks. I'd like to dive right into the law here. Appellant Mr. Onnings, who is formerly known as Tristan Simon, has appealed a multitude of orders. But the order that I think is most concerning, the one that appellant seems to concentrate the most on, and the order that I think that we need to address primarily as appellees, is the motion for disqualification of the entire city attorney's office of the city of Lincoln. I did want to just initially address opposing counsel's argument regarding Dean Foods, which is a 1979 case from the Eighth Circuit. That case was ruling based on the Code of Professional Responsibility. In 2005, the Nebraska Judicial Branch adopted the Nebraska Rules of Professional Conduct. Those are different standards regarding conflict of interest, confidences of clients. We would say Dean Foods is also inapplicable because it ruled under a different standard. I also wanted to note that opposing counsel was talking about Dean Foods ruling that there's a per se rule, and that his argument was that the ruling of the Eighth Circuit was that not just Griffin, the attorney who had prior representation and then current representation, should be disqualified, but that his entire office was. In fact, in footnote 9 of the opinion, it says that it was just singled out to Griffin, the attorney, and his staff members, and it states, we reached no conclusion respecting the staff members other than Nervla and Black. Dean Foods does not rule that the entire office of the Attorney General's office in the state of Arkansas was disqualified, which is basically what opposing counsel is arguing here on behalf of his client. What he's asking is for you, the Eighth Circuit, to go far beyond what Dean Foods ruled nearly 40 years ago. We think that a much better case for the court to look at, while it is a Nebraska state court case, is the State v. King Kennan. It has very similar facts to the fact pattern here. There was an associate attorney who really had no sort of action in the prior case and then went to be employed by the county attorney's office. In that case, the state of Nebraska ruled that there should not be disqualification of the entire office. It was just limited to that attorney. I want to address the facts also. There's been a lot of supposition and innuendo that Ms. Elliott somehow acquired some sort of secret information about appellants and medical records or what have you. The reality of the situation is Ms. Elliott was employed by the public defender's office during the time that Mr. Ahnings was represented in the underlying criminal matter. Appellees do not dispute that the underlying criminal matter is, in fact, substantially related to the civil rights case here today. The facts of the case are that Ms. Elliott did not have an attorney-client relationship with Mr. Ahnings. She never appeared in court, did not enter an appearance in that case, did not review the file, had no knowledge of that. The record is clear from affidavits from her that she had no knowledge of Mr. Ahnings. She represented multiple defendants as a part of the public defender's office, but she has no knowledge of Mr. Ahnings and would not have acquired any sort of information. In fact, Ms. Elliott did leave employment at the public defender's office prior to Mr. Ahnings entering his plea in the criminal matter that's underlying this action. What does the record say about her involvement in this case as an employee? Sure. Ms. Elliott was assigned to this case when Mr. Ahnings filed his civil rights action against the Lincoln Police Department officers. She filed the waivers of service basically on behalf of the officers that had been sued. Then she had directed a paralegal to put together notices for third-party subpoenas to different medical providers. Granted, those subpoenas were premature under the local rules. She should have waited until after the Rule 26 report was entered. That paralegal, having done similar cases and reviewed the police reports regarding Appellant, knew that he was an indigent individual and that he had a past history of schizophrenia. She did subpoenas for Bryan Health where he had received medical treatment related to the underlying criminal matter and then also chose some other providers that were known to her to provide these types of services to indigent patients who might have mental health issues. Opposing counsel immediately objected to the notice of the subpoenas. It's premature. At that same day, Ms. Elliott withdrew those subpoenas and she informed Mr. Catlett that she had previously worked the Public Defender's Office and to avoid any sort of appearance of impropriety, she filed a motion to withdraw and I filed my entry of appearance in this case. At that time, Ms. Elliott was effectively screened. She's had no role in this case. She didn't do any further filings and that's what's really different, differentiates this case from the Dean Foods case. In the Dean Foods case, the attorney that had that prior representation of the client had been actively involved in the bankruptcy case in that prior representation, had some knowledge of the case, whereas Ms. Elliott really was only attorney of record in this case for one month and one day. So very, very minimal activity and it really is going too far to say that the ruling in Dean Foods requires that the entire city attorney's office should be disqualified and we think that the district court's ruling in this is correct. I also want to say that this is a real drastic measure for the court to take. It would be basically saying that the district court abused its discretion in its ruling and frankly, an appellant hasn't met his burden to show that the entire office should be disqualified. I would like to also address the arguments regarding the dismissal of Tarvis Banks. Mr. Banks is also a Lincoln Police Department officer and he was dismissed early on on two causes of action. One for a seizure of Mr. Awnings and also for a claim under the 14th Amendment for substantive due process. The court just outright dismissed the seizure argument under the 4th Amendment without much argument and then went on to discuss in the district court's order that Mr. Banks had no knowledge that there was a serious medical need. And that's just reflected in the record. All that Mr. Banks knew when he arrived at the hospital and was doing the transport of Mr. Awnings to Lancaster County Jail was that he had been checked out, that he was fit for incarceration, had a small cut over his eye and that I don't even think the record reflects that Mr. Banks was told to have Mr. Awnings follow up with a medical visit a couple of days later. I don't think that's reflected in the record. I thought that was alleged in the complaint. That's alleged in the complaint, but I don't think that the... What do you mean it's not reflected in the record? I'm sorry, I apologize. I don't think that the medical records of the emergency room physician state have him follow up in a couple of days. That's my knowledge. I might be incorrect on that. How was that information garnered that the doctor said to follow up in a couple of days? I'm confused now with what you're saying. I think that, from my understanding, I think that was Mr. Awnings' understanding of what should have occurred, or that's Mr. Awnings' allegations in his complaint. Or a verbal suggestion that he should have passed it along when he got back to the jail. Right. Not a letter saying or anything like that. No. And Mr. Banks, our officer Banks, did not file a police report, so there's not anything in the police reports that reflect that. During the transport, there's not any Lancaster County jail records that we have that show there's supposed to be a medical visit follow up in a couple of days. And really the standard for this 14th Amendment claim of substance use process is whether or not there's deliberate indifference. And Eighth Circuit case law is clear that unless there's two prongs to this, there's a subjective prong and an objective prong. And quite frankly, Mr. or Officer Banks did not have subjective knowledge that there was a serious medical need. And there was not deliberate indifference on his part. There was not gross negligence on his part. By whatever omission that he might have made in not relaying that information to Lancaster County jail staff when he lodged Mr. Banks in jail there. Well, hold on. Oh, go ahead. So you're saying that even if the officer knew or was responsible to communicate to the jail that Awnings was supposed to go see a doctor within a couple of days, even if he knew that, that still wouldn't be deliberate indifference because he didn't know how serious his medical condition actually was? That's correct. That's correct. I mean, there's, you know, Mr. Awnings has alleged that two weeks later he followed up with a medical visit and that there was a more serious medical condition that was revealed then. This was not knowledge that was held by Mr. Banks. What Mr. Banks knew is he had a cut over his eye, he was fit for incarceration, and he was to be transported to the jail. He didn't have knowledge that there was any other rib fracture or anything like that that had occurred to Mr. Awnings. Well, just so we're clear, what the complaint alleges is that the doctor informed Banks that Awnings was fit for incarceration but that he needed a follow-up examination with a physician within one to two days. Correct. Yeah, and we do not... That it wasn't in the record. Sorry, no. The doctor, the allegation is the doctor told the officer that he needed a follow-up examination within one to two days. Now, what about his Fourth Amendment claim? The Fourth Amendment claim, I think that's his twelfth cause of action, which is basically that he was seized and... No, he's arguing that the period when Banks was transporting him to the jail was still part of the ongoing seizure and that the conduct of the officers governed by the Fourth Amendment, not by the due process clause. He was already under arrest. Mr. Banks wasn't affecting a seizure of him. He was merely transporting him. He had him seized. And there was probable cause for the arrest. I know that. I'm talking about whether there's a theory available that his failure to communicate this information to the jail was an unreasonable seizure, part of an unreasonable seizure. Appellant hasn't presented any case law that shows that that would affect a seizure. I hadn't found any Eighth Circuit case law that shows that the failure to relay information or an omission of information regarding a medical need constitutes a seizure. A seizure is basically depriving someone of their freedom of movement. I just don't see how that amounts to a Fourth Amendment violation here. I'd also like to move on to the issue of the conviction under Heck v. Humphrey, the claims of false arrest against Officer Fullerton. Those are clearly barred under Heck v. Humphrey. While Mr. Onnings did appeal his no-contest plea to resisting arrest and assault in the third degree to the Nebraska Court of Appeals, that judgment was upheld by the Nebraska Court of Appeals. It has not been overturned, expunged, or rendered invalid. Therefore, the false arrest is clearly barred by Heck v. Humphrey. Well, now, I have a question about that. Sure. You say it's clearly barred, but I thought part of the claim here was that before he resisted arrest, he was seized by these officers. Yes, that's Appellant's argument. Why would that claim be barred by Heck? It might not have merit, but why would it be barred by Heck? Because if you set aside his unlawful or his conviction for resisting arrest, it wouldn't speak to the conduct before he resisted. Well, he had probable cause for arrest for other items as well. In United States v. Sledge, the Eighth Circuit said that the very act of resisting arrest provides probable cause for arrest. Officer Fullerton informed Mr. Onnings he was under arrest and went to grab his arm at that point. That was when Mr. Onnings began resisting arrest, so that provided probable cause. He was also disobeying commands of the police officers to basically step away, to allow them to perform their duties, and issuing the citation to the unrelated individual, and he was not obeying those commands. Therefore, we would ask that you affirm the summary judgment in favor of the Appellees. Thank you. Thank you, Ms. Golden. Mr. Catlin. I have very little time. I just want to hit a couple of issues real quick. First, with regard to banks, Judge Collin asked a very important question. This was a 12B6 motion. This was what we pled. She talks about, well, there's nothing in the record about that. Well, it's in the complaint, so it was alleged. What I read is alleged. You were saying there's some paper that he had in his hand. I didn't see that in the complaint. Well, that may not be in the complaint. Well, then why are you arguing it if you're telling us up here it's a 12B6 motion? Because I happen to know that, but that was the result of the other litigation, but this was a 12B6. Heck v. Humphrey does not bar the claim because, as you said correctly, this was the illegal arrest claim happened. First of all, we don't know from Mather's affidavit exactly what the incident was. What he just said was the incident, but we don't know. There's no factual basis. There's no written verbatim transcript of the plea colloquy at the hearing where the court accepted his plea. They just relied on Mather's affidavit to say, well, it arose out of the incident. Well, how does he know? Well, he was the prosecutor. He doesn't know, so we believe that that affidavit was he was not competent to testify to that. I'm out of time. Thank you very much. We ask the court to reverse the judgment of the district court. Thanks. Thank you, Mr. Catlin. Court, thanks both counsel for your argument to the court this morning. The briefing you submitted to us will take the case under advisement. You may be excused.